1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JENNIFER L. CHRISTOPHERSON, ) | No. CV 09-1005-PHX-MHM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Jennifer Christopherson ("Plaintiff") seeks judicial review and reversal of the final decision of the Commissioner of Social Security to deny Plaintiff's claim for disability insurance benefits pursuant to 42 U.S.C. § 405(g). After consideration of the arguments set forth in the parties' briefs, the record in the case, and the applicable law, the Court issues the following order.

**I.  PROCEDURAL HISTORY**

On April 30, 2006, Plaintiff protectively filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 alleging disability beginning December 21, 2005. (Administrative Record ("AR") 16). Plaintiff's application was denied initially on August 29, 2006, and upon reconsideration on April 12, 2007. (AR 54-56, 66-68). Hearings were held before Administrative Law Judge ("ALJ") Peter J. Baum on February 20, 2008 and May 7, 2008. (AR 33-51, 25-32). On July 25, 2008, the ALJ denied Plaintiff's application for a period of disability and disability

insurance benefits under section 216(i) and 223 of the Social Security Act. (AR 16-22). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 19, 2009 (AR 1-3). On May 12, 2009, Plaintiff initiated the instant action for judicial review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g). (Dkt. #1).

## II. BACKGROUND

### A. Plaintiff's Medical History

Plaintiff alleges disability beginning on December 21, 2005. The Court's summary of Plaintiff's medical history begins from the date Plaintiff alleges her disability began.

In April 2006, Plaintiff was seen at Gilbert Emergency Hospital and diagnosed with acute psychosis. (AR 335). At the time she was taking Abilify, an anti-depressant and Haldol, an anti-psychotic medication. (AR 332). Later that year, Plaintiff was determined seriously mentally ill ("SMI") and referred for treatment. (AR 400).

On January 11, 2007, Nurse Practitioner ("NP") Mary Fisher-Pinson of Superstition Mountain Mental Health Center ("SMMHC") conducted a psychiatric evaluation of Plaintiff. (AR 441-53). At the time, Plaintiff was living with her husband and three small children and was approximately 6.5 months pregnant. (AR 446). NP Pinson diagnosed Plaintiff with major depressive disorder (recurrent, severe, with psychotic features). (AR 452). Plaintiff's Global Assessment of Functioning score was 48.[1] (AR 452). That day, NP Pinson also completed a "Medical Assessment of the Patient's Ability to Perform Work Related Activity," in which she checked boxes reflecting her opinion about Plaintiff's abilities. (AR 443-44). Larry Cowley, M.D., the treating psychiatrist, also signed the assessment form. (AR 444). Plaintiff was evaluated to have *mild deterioration* in personal habits, constriction

---

[1] A GAF is a numeric scale (0 through 100) used by mental health clinicians and doctors to rate the social, occupational, and psychological functioning of adults. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Impairments, 4th text rev., 2000, p.32 (DSM-IV-TR). A GAF score of 51-60 is indicative of moderate symptoms, such as flat affect or occasional panic attacks, or any moderate difficulty in social, occupational, or school functioning. (Id.). A GAF score of 41-50 is indicative of serious symptoms, and a GAF score of 61-70 is indicative of mild symptoms. (Id.).

of interests, and ability to perform simple and repetitive tasks; *moderate to moderately severe* restrictions of daily activities; *moderately severe* limitations in understanding, carrying out, and remembering instructions; responding appropriately to supervision, co-workers, and customary work pressures, and in performing complex or varied tasks; and *moderately severe to severe* impairment in the ability to relate to people. (AR 443-44) (emphasis added). At the end of the evaluation, NP Pinson's written comment noted that Plaintiff "has major depression, recurrent, with psychosis. Her psychosis is at a level that would prevent her from being organized, responding appropriately to others, staying focused, and has anger outbursts." (AR 444).

Plaintiff was seen twice at Gilbert Hospital in February 2007. On February 2, 2007, Plaintiff reported having placed her three-year-old daughter in a scalding hot bath and exhibited auditory hallucinations, stating "she told me to hurt my kids." (AR 392). She was assessed with acute depression. (AR 371). Two days later, Plaintiff reported that "she sees Jesus and the devil on the wall telling her that she is not safe at home" and tried to attack an attending nurse. (AR 389). Plaintiff had stopped taking Zoloft and Hadol when these incidents occurred due to her pregnancy. (AR 388). NP Pinson subsequently prescribed Hadol to Plaintiff on February 6th, stating "At this point, it seems a greater risk to have her psychotic than [to face] the known risks of Hadol in the third trimester." (AR 438).

On February 20, 2007, Brent Geary, Ph.D., a state agency reviewing psychologist, reviewed the record and conducted a mental status examination and clinical interview of Plaintiff. (AR 401-05). Dr. Geary diagnosed Plaintiff with schizoaffective disorder (depressive type); borderline personality disorder with depressive features (moderate); and probable borderline intellectual functioning (not tested). (AR 404). During the mental status examination, Dr. Geary reported Plaintiff's "short-term recall and ability to maintain attention and concentration were intact." (AR 404). Dr. Geary's completed "Medical Source Statement of Ability to Do Work Related Activities (Mental)" rated Plaintiff as *moderately limited* in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete a normal workday and workweek

without interruptions from psychological symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to interact appropriately with the general public. (AR 406-11) (emphasis added).

In March 2007, five days after giving birth, Plaintiff reported feeling "good physically and mentally now." (AR 424). Plaintiff was reported by NP Pinson as alert, with an euthymic mood, logical associations, non-psychotic thought content, good concentration, and intact memory. (AR 424-25). NP Pinson reported that "she is currently not depressed or psychotic. [Patient] feels the Haldol is very helpful." (AR 424). Plaintiff had been on Haldol for about 6 weeks. (AR 424-25). The following month, Plaintiff reported that feeling that "her Hadol is working well for her." (AR 420). Dr. Cowley observed during the visit that Plaintiff was "alert, with an euthmyic mood, logical associations, non-psychotic thought content, good concentration, intact memory, and good judgment and insight." Dr. Cowley concluded that her status was "stable" and advised her to continue with Hadol. (AR 421).

In April 2007, Dr. Ronald Nathan, a state agency doctor conducted a mental residual functional capacity assessment and psychiatric review of Plaintiff. (AR 454-70). Dr. Nathan found that Plaintiff had *moderate limitations* in her ability to maintain concentration and attention for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and interact appropriately with the general public. (AR 454-56) (emphasis added). Dr. Nathan found that Plaintiff was *not significantly limited* in her ability to understand and remember detailed instructions; carry out detailed instructions; sustain an ordinary routine without special supervision; and ability to make simple work-related decisions, among other findings. (AR 454-55) (emphasis added).

Plaintiff continued to be treated by SMMHC from June 2007 to November 2007. (AR 492-510). Her diagnosis throughout this period was "major depression, recurrent, severe,

- 4 -

with psychotic features, GAF 48." (Id.). In June 2007, NP Pinson noted Plaintiff was not having unusual thoughts or hallucinations. (AR 507). Plaintiff reported some side effects from Hadol, reporting that she often felt like she was "in a daze", was cognitively slow, and sometimes fell asleep in car drives with her husband. (Id.). On examination, Plaintiff remained alert, with an euthmymic mood, logical associations, non-psychotic thought content, good concentration and intact memory. (AR 507-08). In July 2007, Dr. Cowley observed some paranoid thought, but again found Plaintiff alert, with an euthmymic mood, logical associations, good concentration, intact memory, and good judgment and insight. (AR 501-02). In August 2007, Plaintiff reported experiencing "abnormal fatigue" and that she stayed in bed until 5 p.m., feeling like "she could sleep around the clock." (AR 495). Upon examination, Plaintiff remained alert, with an euthmymic mood, logical associations, non-psychotic thought content, good concentration and intact memory. (AR 495-96). However, NP Pinson concluded Plaintiff's status had worsened, noting that Plaintiff was "depressed and hypersomic." (AR 496). Plaintiff was discontinued from Zoloft and started on Effexor (another anti-depressant). (Id).

Plaintiff began treatment at Horizon Human Services in January 2008. (AR 528-31). Plaintiff reported she felt "depressed severely" and "anxious all the time." (AR 530). She noted that her life was "becoming more stable" yet Dr. Sidhu reported that Plaintiff "has hypersomnia and is not able to get out of bed before 10 a.m." (Id.). Dr. Sidhu found that Plaintiff was alert, with fair concentration and intact memory, but stated that her insight and judgment were poor. (AR 531). She diagnosed major depression, recurrent, severe, with psychotic features, and an eating disorder not otherwise specified. GAF was 45. (Id.). She continued Plaintiff's prescriptions for Hadol and Effexor. (Id.).

**B. Hearing Testimony**

On February 20, 2008 and May 7, 2008, hearings relating to Plaintiff's application for disability benefits were held before ALJ Peter J. Baum. (AR 27-51). At the first hearing on

February 20, 2008, Plaintiff was the only witness to give testimony. (Id.). Kathleen McAlpine, a vocational expert, was the only witness to give testimony at the second hearing on May 7, 2008. (AR 27-32).

Plaintiff, age 35, at the time of the hearing on February 20th testified that she had completed up to junior year in college and that her past work experience involved working as a hair stylist. (AR 38). Plaintiff testified that she had stopped working in December 2005 because she was "too stressed out." (AR 39). Plaintiff stated that she had not looked for other work after that because "I wasn't feeling well enough and I have schizophrenia and I was having a lot of breakdowns during that time." (AR 39). She testified that she was taken off medications during her pregnancy and that she has been on Haldol since her third trimester of pregnancy. (AR 47). She stated that despite taking Hadol, "I think that the TV can see me" and "sometimes I feel like the TV is talking to me and telling me messages like people are actually talking to me from through the TV." (AR 48). Plaintiff stated that she slept most of the day. She testified that "I have a terrible time staying awake during the day. Part of it is because of my depression." (AR 44). She attested that "I sleep until about 2:00 in the afternoon. I go to bed at 7:00 the night before" and that depending on the day usually "I take a nap around 4:00 or 5:00." (AR 49-50).

On May 7th, the ALJ took only the testimony of vocational expert Kathleen McAlpine. (AR 27-32). Taking into account Plaintiff's limitations as concluded by Dr. Geary, the vocational expert answered affirmatively that Plaintiff could sustain unskilled work, with some limitations on social interaction. (AR 30). She testified that with Plaintiff's social limitations, Plaintiff could not work in either her previous profession as a hair stylist nor in the restaurant business. (Id.). The vocational expert was posed several hypotheticals by the ALJ, specifically examples of jobs that Plaintiff could sustain given the set of limitations determined by Dr. Geary. (Id.). The vocational expert testified that a hypothetical person like Plaintiff could work "as a janitor, cleaner." (Id.). However the ALJ stipulated that "if those limitations are accepted with a GAF of 45, if I find that . . . they are,

one supported by the medical evidence and, two, outweigh the opinion of Dr. Geary, then obviously this lady cannot work." (AR 31-32).

**C.     ALJ's Conclusion**

On July 25, 2008, the ALJ denied Plaintiff's claim for disability insurance benefits, following the requisite five-step sequential evaluation for determining whether an applicant is disabled under the Social Security Act. See 20 CFR §§ 404.1520 and 416.920. (AR 16-22).

At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since December 21, 2005. (AR 18). At step two, the ALJ concluded that Plaintiff had the following severe impairments: "schizoaffective disorder, depressive type; and moderate borderline personality disorder with depressive features which each impose more than a minimal restriction on her ability to perform basic work activities and thus, are severe impairments." (Id.). However, at step three, the ALJ concluded that Plaintiff's impairments did not meet or equal any of the criteria set forth in any of the listed impairments set forth in Appendix 1 of the Regulations, 20 CFR Part 404, Subpart P, Appendix 1. (Id).

At step four, "[a]fter careful consideration of the record," the ALJ concluded "that the Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the [Plaintiff] is limited but not precluded from performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length or rest periods; and, interacting appropriately with the general public." (AR 19).

In making this determination, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" as well as "opinion evidence." (Id.). The ALJ rejected Plaintiff's credibility, finding that although [Plaintiff's] "medically determinable impairment could reasonably be expected to produced the alleged symptoms; the [Plaintiff's] statements

concerning the intensity, persistence and limiting effects of th[o]se symptoms were not credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." (Id.). In particular, the ALJ stated that [Plaintiff's] medical records show that treating physician(s) responded with limited and conservative treatment" which "is inconsistent with the medical response that would be expected if the physician(s) found the symptoms and limitations to be as severe as reported by the [Plaintiff]. (AR 20). In addition, the ALJ noted that "the objective medical evidence fails to fully support the [Plaintiff]. (AR 20).

The ALJ credited the consultative examiner over the treating physician and nurse practitioner and examining physician "based on [the] nature and/or extent of consultative examining physician's relationship to the claimant; supportability with medical signs and laboratory findings; consistency with the record; and, area of specialization. (AR 20). The ALJ found that "the opinions of the treating physician and nurse practitioner consisted of a check-list assessment that did not include an explanation of the bases of their conclusions," that the "GAF assessment . . . appears to be based primarily on the subjective statements of the claimant," and that the underlying documentation from this treating source provided "little, if any, objective observation of signs or symptoms or administration of an appropriate diagnostic examination along with a description of results." (AR 20). Based on these considerations, the ALJ concluded that "such lack of documentation fails to support the limitations provided in the medical source assessment." (Id.).

At step five, the ALJ found that Plaintiff "is unable to perform past relevant work." (AR 21). The ALJ relied on the vocational experts's testimony at the prior hearing that "based on the [Plaintiff's] residual functional capacity, the [Plaintiff] would be unable to perform her prior relevant work." (Id.). However, the ALJ found that "considering the [Plaintiff's] age, education, work experience, and residual functional capacity, the [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the regional economy." (Id.). Specifically, the ALJ relied on the vocational expert's testimony that an individual with the [Plaintiff's] age, education, work experience and residual capacity "would be able to perform the requirements of representative occupations

such as janitor/cleaner, of which there are 2.3 million such jobs in the national economy and 35,420 in the state of Arizona." (AR 21). Thus, based on the ALJ's findings, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from December 21, 2005 through the date of this decision (20 CFR 404.1520(g))." (AR 22).

### III. STANDARD OF REVIEW

The Court must affirm an ALJ's findings of fact if they are supported by substantial evidence and free from reversible legal error. See 42 U.S.C. 405(g); see also Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). Substantial evidence means "more than a mere scintilla," but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See, e.g., Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

In determining whether substantial evidence supports a decision, the record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). Nonetheless, "[i]t is for the ALJ, not the courts, to resolve ambiguities and conflicts in the medical testimony and evidence." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations and quotations omitted). The ALJ may draw inferences logically flowing from the evidence, and "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion which must be upheld." Id. (citation omitted). However, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [the Court] may not substitute [its] judgment for that of the ALJ." Robbins v. Social Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

In order to qualify for disability insurance benefits, a plaintiff must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c (a)(3)(A). A plaintiff must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous

work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). To determine whether an applicant is eligible for disability benefits, the ALJ conducts the following five-step sequential analysis:

(1) determine whether the applicant is currently employed in substantial gainful activity;
(2) determine whether the applicant has a medically severe impairment or combination of impairments;
(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;
(4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;
(5) if not, determine whether the applicant is able to perform other work that exists in substantial numbers in the national economy.

20 CFR §§ 404.1520, 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987).

## IV. DISCUSSION

Plaintiff contends that the ALJ (1) erred by crediting the opinion of the one-time examiner Brent Geary, Ph.D., over the assessments of the treating psychiatrist, Dr. Cowley, nurse practitioner, Pinson, and another treating psychiatrist, Dr. Sidhu; and (2) erred by rejecting Christopherson's symptom testimony in the absence of clear and convincing reasons for doing so. Plaintiff requests for this Court to exercise its discretion to remand for determination of disability benefits. (Dkt. #11).

### A. The ALJ's Adoption of the Opinion of One-time Examiner Brent Geary Over Treating Psychiatrist, Dr. Cowley, Nurse Practitioner, Pinson, and Treating Psychiatrist, Dr. Sidhu

Plaintiff contends that the ALJ committed an error in crediting the opinion of the one-time examiner Brent Geary, Ph.D., over the assessments of the treating psychiatrist, Dr. Cowley, nurse practitioner, Pinson, and another treating psychiatrist, Dr. Sidhu. Plaintiff argues that the ALJ erred in deciding to credit Dr. Geary's opinion "based on (1) the nature and/or extent of the consultative examining physician's relationship to the claimant; (2) supportability with medical signs and laboratory findings; (3) consistency with the record; and (4) area of specialization." (Dkt. #11).

First, Plaintiff argues that Dr. Geary's "relationship to the claimant" as a one-time examining psychologist hired by the agency was not a legitimate reason to prefer his opinion over the assessments of Plaintiff's treating and examining physicians. Second, Plaintiff contends that with respect to "supportability of medical signs and laboratory findings" that "there were no medical signs and laboratory findings relative to Christopherson's mental impairments." Third, Plaintiff argues that the ALJ did not point out where there were consistencies between the record and the Geary report. Fourth, with respect to Dr. Geary's "area of specialization," Plaintiff asserts that there was no necessary reason to favor Dr. Geary, a psychologist, over psychiatrists Dr. Cowley and Dr. Sidhu and nurse practitioner Pinson. In addition, Plaintiff alleges that the ALJ erred in impugning Dr. Cowley and NP Pinson's assessments on the basis that they "consisted of a check-list assessment that did not include an explanation of the bases of their conclusions." Finally, Plaintiff asserts that the ALJ erred in impugning the GAF score of 45 from Horizon Human Services as "based primarily on the subjective statements of the claimant." Defendant, on the other hand, contends that the ALJ properly assessed the medical opinions evidence of record and provided sufficient reasoning for discounting the opinions of Dr. Cowley and Dr. Sidhu.

"If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2000) (citations omitted). However, the ALJ may disregard a treating physician's opinion when his or her opinion is not supported by the medical record or there is conflicting medical evidence. See, e.g., Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1463-1464 (9th Cir. 1995); Magallenes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). If a treating physician's opinion is contradicted by the opinion of an examining physician, the ALJ can reject the treating physician's opinion with specific, legitimate reasons that are based on substantial evidence in the record. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). A consultative examiner's opinion may constitute substantial evidence. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

Here, the ALJ provided specific and legitimate reasons in his decision supported by substantial evidence in the record for crediting the opinion of the consultative examiner over the treating physicians and nurse practitioner. Specifically, the ALJ's reasons for crediting Dr. Geary opinion were "based on the nature and/or extent of consultative examining physician's relationship to the claimant; supportability with medical signs and laboratory findings; consistency with the record; and, area of specialization." (AR 20). The ALJ's rationale for each of his stated reasons is discussed by the Court below.

First, with respect to the nature and extent of the consultative examining physician's relationship to the Plaintiff, under certain circumstances, a treating physician's opinion may be entitled to little if any weight; for example, if the treating physician has not seen the patient long enough to have obtained a longitudinal picture of the patient's impairments. Holohan v. Massanari, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001) (citing 20 C.F.R. 404.1527(d)(2)(i)). The record indicates that at the time that both Dr. Cowley and Dr. Sidhu conducted an assessment of Plaintiff's residual functional capacity in January 2007 and January 2008 respectively, neither physician had a history of treating the Plaintiff prior to conducting the assessment. Although Dr. Cowley later treated Plaintiff throughout most of 2007, Dr. Cowley's assessment of Plaintiff's ability to perform work related activities was conducted on Plaintiff's first visit to Dr. Cowley's office on January 11, 2007. (AR 442-53). Similarly, the record indicates that Dr. Sidhu's assessment of Plaintiff's residual functional capacity was conducted during Plaintiff's first visit to Dr. Sidhu's office in January 2008. (AR 528-31). Thus, the two treating physicians' relationship to Plaintiff at the time they conducted their assessments of Plaintiff were no more extensive than Dr. Geary's relationship with Plaintiff at the time of his one-time evaluation on February 20, 2007.

With respect to the supportability of medical signs and laboratory findings relating to Plaintiff's residual functional capacity, the Court notes that there were no laboratory findings in the record relating to Plaintiff's residual functional capacity provided by either consultative examiner Dr. Geary, treating psychiatrist Dr. Cowley, nurse practitioner, Pinson, and treating psychiatrist, Dr. Sidhu. However, with respect to Plaintiff's medical signs

relating to her residual functional capacity, the ALJ noted in his decision that the opinions of the treating physician Dr. Cowley and NP Pinson were discounted because their check-list assessment of Plaintiff's ability to perform work related activity did not include an explanation of the bases of their conclusions and that "the underlying documentation from this treating source provided in the record reveals little, if any, objective observation of *signs* or symptoms or administration of an appropriate diagnostic examination along with a description of results." (AR 20) (emphasis added). The Court notes that NP Pinson made a two-sentence comment at the end of Plaintiff's two-page check-list assessment. (AR 444). NP Pinson wrote that "Pt has major depression, recurrent, with psychosis. Her psychosis is at a level that would prevent her from being organized, responding appropriately to others, staying focused, [and] has anger outbursts." (Id.). However, as discussed above, Dr. Cowley and NP Pinson had no history of treating Plaintiff's mental impairments at the time of their check-list assessment on January 11, 2007. Based on the lack of a history of treatment of Plaintiff by Dr. Cowley and NP Pinson, the Court does not find unreasonable the ALJ's decision that the two-sentence comment was lacking as an explanation of the bases of their conclusions with respect to Plaintiff's check-list assessment. A review of the record also does not indicate that Dr. Cowley and NP Pinson administered and evaluated a diagnostic examination at the time of conducting the assessment nor does the record reveal that they made anything more than minimal objective observations of Plaintiff's symptoms relating to her residual functional capacity at the time of the assessment. The record indicates that Dr. Cowley did not maintain an extensive medical relationship with Plaintiff. Plaintiff visits to SMMHC lasted for eight months after the evaluation was conducted. Her last visit to SMMHC was in August 2007. (AR 495). Her last contact with SMMHC was in November 2007 to refill her medication. (AR 488).

In addition, the ALJ also noted in his decision that the GAF assessment conducted by Dr. Sidhu "appears to be based primarily on the subjective statements of the claimant." (Id.). The Court's review of the record indicates, as noted previously, that Dr. Sidhu's assessment of Plaintiff's residual functional capacity was conducted during Plaintiff's first visit to Dr.

- 13 -

Sidhu's office in January 2008 and lasted 30 minutes. (AR 530-31). The record does not provide substantial evidence to indicate that Dr. Sidhu's GAF assessment was based on more than subjective statements by the claimant. (Id.). The record does not provide any further medical records from Dr. Sidhu following the initial evaluation she conducted in January 2008.

On the other hand, Dr. Geary's assessment of the Plaintiff consisted of a mental status examination and a clinical interview and the documentation provided by Dr. Geary in the record consists of a five-page summary of the mental status examination and impressions. (AR 401-411). It also includes a six-page "Medical Source Statement of Ability to Do Work Related Activities (Mental)." (Id.). Dr. Geary provided several objective observations indicated in the record relating to Plaintiff's residual functional capacity during the assessment. For example, "short-term recall was ... intact as Jennifer recollected all three unrelated words presented to her five minutes earlier. She repeated number series of six in length forward and five backward" and "[j]udgment seemed intact. If Jennifer were the first person in a movie theater to see smoke and fire, she would "[p]robably go and tell someone to set the first alarm off." (AR 402). In light of these considerations, the Court finds that the ALJ's reason for adopting Dr. Geary's opinion relating to Plaintiff's residual functional capacity over treating psychiatrist, Dr. Cowley, Nurse Practitioner, Pinson, and treating psychiatrist, Dr. Sidhu is not unreasonable. See Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1195 n.3 (9th Cir. 2004) (finding an ALJ did not err in discounting a treating physician's opinion on a checklist form where the physician's treatment notes did not provide objective medical evidence of the limitations, and the opinion appeared to be based on the claimant's subjective statements).

With respect to crediting the consultative examiner based on the "consistency with the record," the ALJ discussed in his decision the objective medical evidence in the record and highlighted discrepancies between Dr. Cowley, Dr. Geary, and Dr. Sidhu with respect to the residual functional capacity of Plaintiff. The ALJ noted that in January 2007, Dr. Cowley and the nurse practitioner found Plaintiff "to be so impaired as to be unable to be organized

- 14 -

1 or respond appropriately to others[,]" "could not stay focused" and is "unable to complete
2 a normal workday/workweek without interruptions from psychologically based symptoms
3 and to perform at a consistent pace without an unreasonable number/length of rest periods."
4 (AR 20, 44). Dr. Cowley's January 2007 evaluation was then contrasted in the ALJ's
5 decision by the examination results of Dr. Geary, the consultative examiner, which were
6 performed just one month later on February 20, 2007. (AR 20). The ALJ highlighted how
7 Dr. Geary found Plaintiff to be "moderately limited" in her "ability to perform activities
8 within a schedule, complete a normal work week without interruption from psychological
9 symptoms and persistently deal with the public." (AR 20). The ALJ also noted in his
10 discussion how Dr. Geary found Plaintiff's "eye contact and attention span were satisfactory.
11 No mannerisms or physiological symptoms were observed. Speed of speech was normal and
12 associations were logical. The claimant was oriented and mood was described as good.
13 Judgment seemed intact." (Id.). The ALJ also found that Dr. Geary had reported that "[she]
14 noted that her antipsychotic medications were very helpful to allow her to think more clearly,
15 work through problems and control her anger." (Id.). Dr. Cowley's February 2007 evaluation
16 was subsequently contrasted with Dr. Sidhu's January 2008 report, a report that found that
17 Plaintiff's "insight and judgment were poor" and her mood was "depressed, anxious and
18 fearful" and her "GAF was assessed at 45." (Id.).

19 Upon review of the record, the Court finds that the ALJ's crediting of the consultative
20 examiner's opinion over the other physicians based on "consistency with the record" is
21 reasonable in light of the discrepancies that exist in the objective medical evidence with
22 respect to Plaintiff's residual functional capacity. The Court notes that at the time of
23 Plaintiff's hearing before the ALJ on February 20, 2008, the ALJ was aware that a conflict
24 existed between the objective medical evidence of the state agency examiner, Dr. Geary and
25 the treating psychiatrist, Dr. Cowley. (AR 45). During the hearing, the ALJ stated that
26 "obviously there is a conflict" in response to Plaintiff's attorney's argument that the
27 limitations noted in the January 11, 2007 assessment by Dr. Cowley "are even much more
28 significant and extreme than were noted by Dr. Geary [on February 20, 2008]." (AR 46).

With respect to the conflict, the ALJ confirmed that Plaintiff was off her medications at the time of the January 11th 2007 assessment because of her pregnancy. (AR 46). The medical records supports that Plaintiff was taken off her medication for depression and psychosis due to her pregnancy and was off of her medication at the time the first evaluation was taken by Dr. Cowley on January 11th. The medical record indicates that Plaintiff was placed back on Hadol, an anti-psychosis medication, by NP Pinson on February 6th, almost a month after the initial assessment was taken by Dr. Geary, and two weeks before an assessment was conducted by the state examiner Dr. Geary on February 20th, 2008. (AR 438). With respect to the evaluation conducted in January 2008, the Court's review of the record indicates that a GAF of 45, indicating serious functioning symptoms, was assessed by Dr. Sidhu, a psychiatrist who had no history of treating the Plaintiff and conducted the evaluation during a 30 minute session on Plaintiff's first visit. (AR 530).

In light of the inconsistencies that exist in the record with respect to Plaintiff's residual functioning capacity assessments by Dr. Cowley, Dr. Geary, and Dr. Sidhu, the Court finds that the ALJ's decision to credit the consultative examiner's opinion with respect to Plaintiff's residual functional capacity is reasonable.

The Court notes that the ALJ did not discuss in his decision his reason for crediting the consultative examiner's opinion based on the examiner's "area of specialization." The Court does not find evidence in the record to support this reason. Nevertheless, the Court finds that in its totality, the ALJ's decision presents specific and legitimate reasons that are sufficient in detail and specificity and based on substantial evidence in the record to justify the ALJ decision to credit the consultative examiner over the treating physician, nurse practitioner and examining physician. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (finding harmless error where the ALJ gave some erroneous reasons, but other legally valid ones). Accordingly, the Court finds that the ALJ properly adopted the opinion of Dr. Brent Geary over treating psychiatrist, Dr. Cowley, nurse practitioner, Pinson, and treating psychiatrist, Dr. Sidhu. As such, the Court finds that the record does not establish a basis to overturn the ALJ's decision.

**B.      The ALJ's Rejection of Plaintiff's Symptom Testimony as Not Credible**

Plaintiff argues that the ALJ improperly rejected Christopherson's symptom testimony as not credible. However, the Court finds that the ALJ indicated and discussed specifically what evidence with respect to Plaintiff's symptom testimony is not credible. In addition, the Court finds that the ALJ's credibility finding is supported by the substantial evidence..

"[A]n ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citations omitted). Instead, the ALJ is responsible for determining credibility and resolving conflicts in medical testimony." See Magallenes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). Nonetheless, "if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the plaintiff was malingering, the [ALJ]'s reason for rejecting the [plaintiff's] testimony must be clear and convincing and supported by specific findings." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). General findings are insufficient, rather the ALJ must identify what evidence is not credible and what evidence undermines the claimant's complaints. Id.

First, the ALJ found that Plaintiff's statements "concerning the intensity, persistence and limiting effects of her symptoms" not credible to the extent they are "inconsistent with the residual functional capacity assessment." (AR 19). Specifically, the ALJ noted that medical records show that "treating physician(s) responded with limited and conservative treatment" which the ALJ found to be "inconsistent with the medical response that would be expected if the physician(s) found the symptoms and limitations to be as severe as reported by the claimant." (AR 20).

With respect to the medical response provided to the Plaintiff by treating physicians, the Court notes that a review of the record indicates that a great bulk of Plaintiff's medical records are dated prior to the alleged onset date of disability of December 21, 2005. Before the onset date of disability, the Court notes that Plaintiff had multiple hospital admissions and ongoing psychiatric treatment. Yet, the Court's review of the medical records from the onset date in December 2005 to the last medical record, dated January 2008, indicate that there is

substantial evidence to support the ALJ's findings that the treatment of Plaintiff was limited and conservative. The Court notes that medical visits by Plaintiff between this period were primarily sporadic in nature and medication was the primary method for treating Plaintiff's mental health symptoms. For example, medical records following the prescription of Hadol in February 2007 through 2007 indicate that Plaintiff reported finding Haldol "helpful" that her conditioned had "improved" and was "stable." (AR 424, 420, 421). In January 2008, Plaintiff was seen by Dr. Sidhu and reported severe depression. (AR 529). The record does not provide treatment records beyond that date but indicate that following the January 2008 appointment, Dr. Sidhu did not scheduled a plan review with Plaintiff until six months later, for June 2008. (AR 529). It does not appear in the record that Plaintiff's medication was coupled with long term outside psychological counseling nor other treatment methods during the period of the alleged onset of disability.

Upon the Court's review of the medical records from December 2005 to 2008, the Court does not find substantial evidence to negate the ALJ's finding that the treatment was "limited and conservative" during that time period. Based on these considerations, the Court finds that there is substantial evidence in the record to support the ALJ's finding Plaintiff's statements as to the intensity, persistence and limiting effects of her symptoms as not credible.

Next, the ALJ noted that Plaintiff's statements were not credible with respect to the residual functional capacity assessment as "the objective medical evidence fails to fully support the claimant." (AR 20). The ALJ supported this conclusion by discussing the objective medical evidence in the record and highlighting discrepancies between Dr. Cowley, Dr. Geary, and Dr. Sidhu's evaluations with respect to the severity of Plaintiff's mental impairment. The Court discussed previously in detail the inconsistencies that exist in the objective medical evidence between Dr. Geary, Dr. Cowley, and Dr. Sidhu's assessment of the severity of Plaintiff's mental impairment. <u>Supra</u> 14- 16.

The Court's review of the record also indicates that the objective medical evidence fails to fully support the claimant's statements. For example, in the hearing before the ALJ, Plaintiff testified that "I sleep until about 2:00 in the afternoon. I go to bed at 7:00 the night

before." (AR 49). In Dr. Geary's evaluation however, Plaintiff was reported as relating "I get up about 5:00 in the morning. Evenings, make dinner, watch TV, rest, pick up, go to bed I'd like to say 9:00." (AR 404). Dr. Sidhu's evaluation indicates that Plaintiff "is not able to get out of bed before 10 a.m." (AR 529). Furthermore, Plaintiff testified that she had experienced difficulty staying awake during the day for "a couple of years" however a review of the record indicates that Plaintiff was not reported as having difficulty staying awake until mid-2007. For example, in January 2007, she reported to NP Pinson that she was "sleeping okay, waking up occasionally, but [...] can still fall asleep." (AR 521). In May, 2007, NP Pinson reported that her sleep was "okay" and in June "sleep is variable related to her infant's needs" (AR 511, 507) in July "sleep okay and a lot." (AR 511, 507, 501). It was not until August 2007 that Plaintiff reported experiencing was "abnormal fatigue" and that she stayed in bed until 5 p.m., feeling like "she could sleep around the clock." (AR 445). In January 2008, Dr. Sidhu also reported that Plaintiff has "hypersomnia." (AR 529).

In light of these considerations, the Court finds that the ALJ's finding that the objective medical evidence fails to fully support the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms is reasonable in light of the discrepancies that exist in the objective medical evidence and the inconsistencies that exist between her testimony and the medical evidence.

While Plaintiff clearly disagrees with the ALJ's determination, the Court's review is limited to whether the ALJ provided the requisite reasons to support his adverse credibility determination. As such, in reviewing the ALJ's findings and bases for his determination that the treating physician(s) responded with limited and conservative treatment and that the objective medical evidence fails to fully support the Plaintiff's statements, the Court cannot conclude that the ALJ's credibility analysis was not supported by substantial evidence and free of legal error.

**C.  Exercise of Court's Discretion to Remand For Determination of Disability Benefits**

Based on the considerations noted above and the Court's finding that the ALJ did not err in crediting the opinion of Dr. Geary over the assessments of the treating psychiatrist Dr. Cowley, NP Pinson and Dr. Sidhu and that the ALJ did not err in rejecting Plaintiff's symptom testimony, the Court declines to remand the claim for determination of disability benefits.

## V. SUMMARY

The Court finds that the ALJ did not err in crediting the opinion of Dr. Geary over the assessments of the treating psychiatrist Dr. Cowley, NP Pinson and Dr. Sidhu. The ALJ provided specific and legitimate reasons in his decision supported by substantial evidence in the record for crediting the opinion of the consultative examiner over the other physicians. In addition, the ALJ made the necessary credibility determinations and provided specific and legitimate reasons that appear to be supported by substantial evidence in the record. Thus, based on a review of all the facts and the record presented, the Court finds that there is substantial evidence to support the ALJ's decision.

**Accordingly,**

**IT IS HEREBY ORDERED** that Plaintiff's complaint for reversal of the final decision of the Commissioner of Social Security is DENIED. (Dkt. #1).

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter judgment accordingly.

DATED this 6th day of July, 2010.

_____
Mary H. Murguia
United States District Judge